## PORTO RICO RAILWAY, LIGHT & POWER COMPANY *v.* MOR.

### CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 728. Argued April 23, 1920.—Decided June 1, 1920.

In the provision of the Act of March 2, 1917, c. 145, 39 Stat. 965, which gives the United States District Court for Porto Rico jurisdiction "where all the parties on either side of the controversy are citizens or subjects of a foreign State or States, or citizens of a State, Territory, or District of the United States not domiciled in Porto Rico," etc., the clause "not domiciled in Porto Rico" relates to both preceding clauses, so that jurisdiction is not conferred over an action by an alien domiciled in Porto Rico against a local corporation. P. 346.

When several words are followed by a clause which is applicable as much to the first and other words as to the last, the clause should be read as applicable to all. P. 348.

THE case is stated in the opinion.

*Mr. Carroll G. Walter* for Porto Rico Railway, Light & Power Co.

No brief filed for Mor.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

Mor, a subject of the King of Spain, domiciled in Porto Rico, brought in the United States District Court for

Porto Rico this action at law for an amount exceeding $3,000, exclusive of interest and costs, against the Porto Rico Railway, Light and Power Company, a Porto Rico corporation having its principal place of business there. Objection to the jurisdiction of the trial court was overruled and the plaintiff recovered judgment. The case came before the Circuit Court of Appeals for the First Circuit on writ of error and that court has presented to us by certificate the question whether the District Court had jurisdiction. The answer depends upon the construction to be given to the following provision contained in § 41 of the so-called Jones Act of March 2, 1917, c. 145, 39 Stat. 951, 965, which provides a civil government for Porto Rico:

"Said district court shall have jurisdiction of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign State or States, or citizens of a State, Territory, or District of the United States not domiciled in Porto Rico, wherein the matter in dispute exceeds, exclusive of interest or cost, the sum or value of $3,000. . . ."

It is clear under this act that if Mor, instead of being a Spanish subject, had been a citizen of one of the United States, the court would not have had jurisdiction since he was domiciled in Porto Rico. The precise question, therefore, is whether the restriction of jurisdiction to cases where all the parties on either side of the controversy are "not domiciled in Porto Rico" applies to aliens as well as to American citizens.

The judicial system of Porto Rico prior to annexation to the United States comprised a Supreme Court and district trial courts of general jurisdiction and municipal courts. The proceedings in all of these courts were conducted in the Spanish language and according to the forms of the civil law. By § 33 of the Foraker Act, April 12, 1900, c. 191, 31 Stat. 77, 84, which established what was intended

as a temporary civil government for the island, these insular courts were continued, with the proviso that the judges of the Supreme Court should be appointed by the President, and the judges of the inferior courts by the Governor. By § 40 of the Jones Act the jurisdiction of these courts and the forms of procedure in them were further continued.

The "District Court of the United States for Porto Rico" provided for by § 41 of the Jones Act was, in effect, a continuation of the district court of the United States provided for by § 34 of the Foraker Act, as amended by the Act of March 2, 1901, c. 812, § 3, 31 Stat. 953.[1] Both acts conferred upon the court jurisdiction of all cases cognizable in circuit or district courts of the United States; the court is by both directed to proceed in the same manner as those courts; and in both there is an express provision that the pleadings and all proceedings shall be conducted in the English language. But the Jones Act greatly abridged the jurisdiction. The jurisdictional amount, which by the amendatory Act of March 2, 1901, had been lowered to $1,000, was raised to $3,000. And, whereas by the amendment of 1901 the court had been given jurisdiction in case either party was a citizen of the United States, even if he was domiciled in Porto Rico, the Jones Act limited the jurisdiction dependent on American citizenship to the cases where the Americans were not domiciled in Porto Rico. Whether it likewise limited jurisdiction dependent on alienage is the question submitted to us.

---

[1] Act of March 2, 1901, c. 812, § 3: "That the jurisdiction of the district court of the United States for Porto Rico in civil cases shall, in addition to that conferred by the Act of April twelfth, nineteen hundred, extend to and embrace controversies where the parties, or either of them, are citizens of the United States, or citizens or subjects of a foreign State or States, wherein the matter in dispute exceeds, exclusive of interest or costs, the sum or value of one thousand dollars."

No reason appears why· the clause "not domiciled in
Porto Rico " should not be. read as applying to the entire
phrase "citizens or subjects of a foreign State or States, or
·itizens· of a State, Territory, or District of· the United
States."   When several words are followed by a clause
which is applicable as much to the first and other words as
to the last, the natural construction of the language
demands that the clause be read as applicable to all.
*United States*· v. *Standard Brewery*, 251 U. S. 210, 218;
*Johnson* v. *Southern· Pacific Co.*, 196 U. S. 1, 18–19, and
cases cited.   Furthermore, special reasons exist for· so
construing the clause in question.   The act manifests a
·general purpose to greatly curtail the jurisdiction, of the
District Court.   If the application of the clause were
⌐doubtful, we should so construe the provision as to effec-
tuate the general purpose of Congress.· *American Security
& Trust Co.* v. *District of Columbia*, 224 U. S. 491; *Inter-
Island Steam Navigation Co.* v._*Ward*, 242 U. S. 1.   But it
seems to us clear that it applies alike to aliens and to
.American  citizens.      .

Suit may be brought in the District Court if either party
has the jurisdictional qualifications; that is, the act
confers upon such party not merely the right to sue but
the liability to be sued.   In the population of Porto Rico
there· are many aliens and these are largely Spaniards.[1]
If the limitation "not domiciled in Porto· Rico " were

---

[1] "It is somewhat surprising to find that 886,442 of the actual popula-
tion are classed as Spaniards, and only 4,324 as foreigners." Report
on the Island of Porto Rico by Henry C. Carroll, Special Commissioner,
October 6, 1899, p. 11.       .

. "Spanish-born were 7,690, or 55% of the total foreign born.  The
United States contributed 1,069."  Commercial Porto Rico, Depart-
ment of Commerce and Labor, April, 1907, p. 11.

"Of the total number of males 21 and over in 1910,.238,685 were of
Porto Rican citizenship, 4,112 were of Spanish citizenship, 1,836 were
citizens of the United States, and 2,385 were citizens of other·foreign
countries." Statistics for Porto Rico, 13th Census, p. 24.

inapplicable to aliens, the result would work peculiar hardship and assuredly unintended discrimination against these Spaniards. A Spanish subject domiciled in Porto Rico might be sued by an American domiciled in Porto Rico or a Porto Rican in the District Court, where the proceedings are conducted in the English language and according to the forms of Anglo-American law; whereas an American domiciled in Porto Rico could be sued only in the insular courts where the proceedings are conducted in the Spanish language and according to the procedure and processes of the civil law. This might not only prove very inconvenient to Spanish residents, but would be inconsistent with the spirit of Article XI of the Treaty of 1898 between Spain and the United States (30 Stat. 1754, 1760), under which Spaniards residing in Porto Rico were guaranteed "the right to appear before such courts, and to pursue the same course as citizens of the country to which the courts belong."

Congress could not have intended to give the District Court jurisdiction of any controversy to which a domiciled alien is a party while denying under similar circumstances jurisdiction where a domiciled American is a party.

The question submitted is answered

*No.*