## KING v. DISTRICT OF COLUMBIA.

(Court of Appeals of District of Columbia. Submitted December 6, 1921. Decided January 3, 1922.)

No. 3661.

1. **Licenses ⬡⇒11(1)—Agreement as to operation of motor vehicles by person from other state held not to exclude driver, whose District license was revoked.**

   An agreement between the District of Columbia and the state of Virginia providing that any one legally entitled to operate a motor vehicle in Virginia might operate such vehicle in the District without a District license tag or driver's permit, did not exclude from its protection one whose District driver's permit had been revoked.

2. **Statutes ⬡⇒219—When meaning doubtful, great weight given construction by department charged with execution.**

   When the meaning of a statute is doubtful, great weight should be given to the construction placed on it by the department charged with its execution.

3. **Licenses ⬡⇒11(1), 14(1)—Statute as to operation of motor vehicles by nonresidents held to exempt operator as well as vehicle.**

   Act March 3, 1917, providing that motor vehicles, owned or operated by nonresidents having complied with the laws of the state of their residence requiring the registration of motor vehicles or licensing of operators, shall not be required to be licensed or registered under the laws and regulations of the District of Columbia, dispenses with the operator's license as well as the registration of the vehicle, the words "licensed or registered" in the latter part of the statute being used in the same relation as their noun forms in the first part of the act, especially where this was the construction placed thereon by an agreement between the District of Columbia and the state of Virginia.

4. **Statutes ⬡⇒206—Every clause and word to be given effect, if possible.**

   In construing a statute, it is the duty of the court to give effect, if possible, to every clause and word of the statute.

5. **Statutes ⬡⇒189—Literal interpretation rejected, when contrary to evident meaning of whole statute.**

   If a literal interpretation of a statute would be contrary to the evident meaning of the statute, taken as a whole, it should be rejected.

6. **Statutes ⬡⇒181(1)—Construed in case of doubt to serve legislative design.**

   Where there is doubt concerning the meaning of a statute, it should be construed, if possible, so as to serve the legislative design.

7. **District of Columbia ⬡⇒22—Nonresident operator of motor vehicle subject to traffic regulations.**

   Notwithstanding Act March 3, 1917, providing that motor vehicles owned or operated by persons complying with the laws of the state of their residence need not be licensed or registered under the laws and regulations of the District of Columbia, such a nonresident operator is amenable to valid traffic regulations, and may be punished for negligence or other infraction of the law.

In Error to the Police Court of the District of Columbia.

Arthur D. King was convicted of operating an automobile without a permit, and he brings error. Reversed and remanded.

⬡⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

T. M. Wampler, of Washington, D. C., for plaintiff in error.

F. H. Stephens and F. W. Madigan, both of Washington, D. C., for defendant in error.

SMYTH, Chief Justice. King was charged in the police court with operating an automobile in the District of Columbia without having obtained a permit to do so. The trial was had upon an agreed statement of facts, the important parts of which are that the defendant, a bona fide resident of Virginia, at the time of his arrest was driving his own automobile in the city of Washington; that it had attached to it proper Virginia license tags, issued to him in accordance with the laws of that state, and that he had in his possession, and exhibited, a permit from the state of Virginia to operate a motor vehicle such as the one he was then operating; that there was then an agreement between the District and Virginia "that any one legally entitled to operate a motor vehicle in the state of Virginia shall be entitled to operate such vehicle in the District of Columbia, without having District of Columbia license tags, and without having a District of Columbia driver's permit, so long as the Virginia authorities permit residents of the District of Columbia, legally entitled to operate motor vehicles there, to operate the same within the state of Virginia without Virginia license tags and without a Virginia driver's permit"; that an act of Congress, approved March 3, 1917 (39 Stat. 1012), provided "that motor vehicles, owned or operated by persons not legal residents of the District of Columbia, but who shall have complied with the laws of the state of their legal residence requiring the registration of motor vehicles or licensing of operators thereof, * * * shall not be required to be licensed or registered * * * under the laws and regulations of the District if the state in which the owner or operator of such motor vehicle has his legal residence extends the same privilege to the motor vehicles owned or operated by legal residents of the District of Columbia"; and that the state of Virginia extends the same privilege to the motor vehicles owned or operated by legal residents of the District of Columbia.

[1] It appears, then, that at the time of defendant's arrest there was an agreement between the District and Virginia providing that a person entitled to operate a motor vehicle in Virginia was entitled to operate one in the District without having a District driver's permit. The argument of counsel for the District seems to be that this agreement was not authorized by the act of Congress, for they say that the only question involved is whether or not the act authorized the operation of a motor vehicle in the District by a nonresident whose District operator's permit had been revoked. The agreement does not exclude such a person from its protection. Nothing is said therein about a nonresident whose permit had been revoked. It provides broadly that any one legally entitled to operate a motor vehicle in Virginia is entitled to do so in the District without a District driver's permit, so long as that state extends the same privilege to residents of the District. King came squarely within the agreement, and if it is valid he was wrongfully convicted.

[2, 3] The District argues that the reciprocity provided for by the act of Congress relates only to the licensing of motor vehicles, and not to driver's permits. This is in conflict with the above-mentioned agreement, which represents the District's interpretation of the act at the time the agreement was made. Upon the District was imposed the duty of enforcing the act. It is the law that—

"When the meaning of a statute is doubtful great weight should be given to the construction placed upon it by the department charged with its execution." United States v. Hermanos y Compañia, 209 U. S. 337, 28 Sup. Ct. 532, 52 L. Ed. 821.

The meaning of this statute is doubtful. Why, then, should not the District's interpretation as evidenced by the agreement prevail?

If the present contention of the District be correct, a nonresident may not operate his own car in Washington even while passing through the city unless he has a District permit. He could not even drive to the license office for the purpose of securing a permit without subjecting himself to arrest. Not only that, but a resident of the District who drove into Virginia would violate the law of that state unless he possessed a Virginia driver's permit. We think the act was passed for the purpose of obviating all the trouble and inconvenience, not to say expense, which would result if the District's contention is sustained.

The statute says in the first part that vehicles owned or operated by persons not legal residents of the District who have complied with the laws of the state of their legal residence "requiring the registration of motor vehicles or licensing of operators thereof * * * shall not be required to be licensed or registered" by the District. It is argued that this exempts only the vehicle, and not the operator, from the District regulation. We may concede that the statute is open to such a construction, but when we consider its purpose we do not think that meaning should be attributed to it. Why limit the District privilege to vehicles owned or operated by nonresidents who had complied with the law of the state of their residence requiring registration of motor vehicles or licensing of operators, if it was not intended to recognize the licensing of the operator as well as the registration of the vehicle?

[4] On the assumption that the District's present position is sound, it would be entirely immaterial to it whether or not a nonresident had a driver's permit, because, if he had one, it would not attach any value to it. Yet we must attribute some significance to that requirement, for it is our duty to give effect, if possible, "to every clause and word of a statute." Montclair v. Ramsdell, 107 U. S. 147, 152, 2 Sup. Ct. 391, 27 L. Ed. 431. See also Grand Lodge, etc., v. Groves, 48 App. D. C. 151.

The statute is inartificially drawn, but when its purpose is kept in mind we think its correct meaning can be reached. In the first part of the act the word "registration" is applied to the vehicle, and the word "licensing" to the operator, while in the latter part the words "licensed or registered" seem to refer to the vehicle only. We think, however, that "licensed or registered" should be treated as used in the

same relation as their noun forms in the first part of the act, and that the true meaning of the latter part is that it shall not be necessary to "license the operator" or "register the vehicle." No other construction will effectuate the purpose of the act.

. [5, 6] If a literal interpretation would be contrary to the evident meaning of a statute, taken as a whole, it should be rejected. Heydenfeldt v. Daney Gold, etc., Co., 93 U. S. 634, 638, 23 L. Ed. 995. Where there is doubt concerning the meaning of a statute, it should be construed, if possible, so as to serve the legislative design. Porto Rico Railway Co. v. Mor, 253 U. S. 345, 348, 40 Sup. Ct. 516, 64 L. Ed. 944. In such a case as this the reason of the law should prevail over its letter. Baender v. Barnett, 255 U. S. 224, 226, 41 Sup. Ct. 271, 65 L. Ed. ——. We believe that the agreement between the District and the state expresses correctly the meaning of the statute.

[7] In passing, we may say that our holding does not relieve a nonresident operator of amenability to valid traffic regulations. If guilty of negligence or other infraction of the law, he may be punished.

The judgment is reversed, and the case remanded for further proceedings not inconsistent with this opinion; costs to be assessed against the defendant in error.

Reversed and remanded.