CLARENCE K. BOWIE, ET ALS., ETC., demandantes y apelantes, *v.* RAFAEL BUSCAGLIA, TESORERO DE PUERTO RICO, demandado y apelado.

Núm. 8795.—*Sometido:* Marzo 7, 1944. *Resuelto:* Mayo 2, 1944.

*E. T. Fiddler, H. S. McConnell, José G. González* y *Jorge M. Morales,* abogados de los apelantes; *Hon. Procurador General Interino, M. Rodríguez Ramos* y *G. Benítez Gautier, Procurador General Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

El presente es un pleito en cobro de contribuciones pagadas por los demandantes al Tesorero, bajo protesta, por

la suma de $234.43, por concepto de contribuciones, recargos, penalidades e intereses sobre gomas y tubos para carros de bueyes importados en Puerto Rico por los demandantes durante 1937, 1938 y 1939. El demandado excepcionó la demanda. Los demandantes han apelado de la sentencia de la corte de distrito dictada después de la resolución declarando con lugar la excepción previa.

La única cuestión aquí envuelta es si la contribución provista en la Sección 16, Ley número 85, Leyes de Puerto Rico, 1925, (pág. 401) según quedó enmendada, conocida como la Ley de Rentas Internas, se aplica a las gomas y tubos para carros de bueyes.

Desde que se aprobó originalmente, la Ley de Rentas Internas ha sido enmendada en casi todas las sesiones de la Legislatura. En varias de estas ocasiones, han sido enmendados los párrafos que tratan de las gomas y tubos. Originalmente, la sección 16 contenía el siguiente párrafo:

"15. *Vehículos de motor.*—Sobre todo vehículo de motor, tales como automóviles, camiones, tractores, auto-wagones, autos de arrastre (sea cual fuere el nombre con que se conocieren); chassis, motores, cajas, tubos interiores y gomas sólidas o neumáticas para las mismas; sobre motocicletas y lanchas (tengan o no puestos los motores); motores para las mismas y sobre gomas sólidas o neumáticas para motocicletas que se vendan, traspasen o usen en Puerto Rico, un impuesto de siete (7) por ciento *ad valorem.*"

Es claro que de acuerdo con este párrafo sólo estaban sujetas a la contribución en cuestión las gomas y tubos para vehículos de *motor,* incluyendo motocicletas. Y por el párrafo 28 de la sección 16 también se imponía una contribución de 7 por ciento *ad valorem* "sobre toda bicicleta de pedal, partes, accesorios y neumáticos para las mismas, que se vendan, traspasen o usen en Puerto Rico". Estas eran las únicas disposiciones en dicha ley que expresamente imponían una contribución sobre gomas y tubos. Las gomas y tubos que no fueran a usarse bien en vehículos de motor o en bicicletas de pedal no estaban por tanto sujetos a la con-

tribución del siete por ciento. Pero estaban sujetos por las disposiciones de la sección 62 de la ley a una contribución del 2 por ciento sobre "cualesquiera artículos objeto de comercio, que no estén especificados en la sección 16 de esta Ley, o exentos de contribución según lo dispuesto en la misma.''

El párrafo 28 de la sección 16 fué enmendado por la Ley número 11, Leyes de Puerto Rico, Sesión Extraordinaria, 1926 (pág. 31), para que leyera como sigue: "28. *Bicicletas.* Sobre toda bicicleta de pedal que se venda, traspase o use en Puerto Rico, un impuesto de siete (7) por ciento *ad valorem.''* Así vemos que de ahí en adelante las gomas y tubos para bicicletas no estaban ya sujetos a la contribución de 7 por ciento *ad valorem* anteriormente impuéstales, y que la referida contribución de 7 por ciento sólo se aplicaba a gomas y tubos para las diferentes clases de vehículos de *motor* descritos en el párrafo 15 de la sección 16.

En 1927 la Legislatura promulgó de nuevo la sección 16, incluyendo los vehículos de motor bajo el párrafo 8 en vez del párrafo 15, pero con la misma fraseología (Ley número 17, Leyes de Puerto Rico, Segunda Sesión Extraordinaria, 1927, pág. 459). Por la Ley número 83, Leyes de Puerto Rico, 1931 (pág. 505), el párrafo 8 de la sección 16 se enmendó para que leyera, en parte, como sigue:

"8. *Vehículos de motor y lanchas y botes de motor.*—Sobre todo vehículo de motor, incluyendo automóviles, autowagones, camiones, tractores, autos de arrastre, motocicletas (sea cual fuere el nombre con que se conocieren), chassis, motores, cajas, baterías, tubos interiores y neumáticos para los mismos, lanchas . . . que se vendan, traspasen, fabriquen, usen o introduzcan en Puerto Rico, un impuesto de diez (10) por ciento sobre el precio de venta en Puerto Rico; *Disponiéndose,* que . . . sobre gomas sólidas para camiones y otros vehículos de motor que se vendan, usen, traspasen, fabriquen o introduzcan en Puerto Rico, el impuesto será de quince (15) por ciento sobre el precio de venta; . . . . ''

Esta Ley de 1931 no hizo referencia a otras gomas y tubos para vehículos, excepción hecha de las gomas y tubos

para vehículos de motor. En julio 24 de 1931 el Tesorero expidió un Reglamento que cubría la Ley de Rentas Internas que dice en parte como sigue:

"Sección 8.—(Sección 16 de la Ley.)—A partir del día 4 de agosto de 1931 se cobrará y pagará como impuesto de rentas internas, por una sola vez, sobre todos los artículos que más adelante se mencionan y aquellos comprendidos en la Sección 16 de la Ley de Rentas Internas . . . que fueren introducidos, vendidos, . . . en Puerto Rico, lo siguiente:

"Diez por ciento sobre el precio de venta de:

"   .   .   .   .   .   .   .

"31. Neumáticos para vehículos de motor.

"   .   .   .   .   .   .   .

"38. Tubos de automóviles."

Este Reglamento, en la sección 9, párrafo 8, definió los tubos interiores y neumáticos como sigue:

"Sección 9.—Definición de Incisos de la Sección 16.—Para los efectos del cobro y pago de los impuestos se definen los siguientes incisos, y la manera de pagar los impuestos, como sigue:

"   .   .   .   .   .   .   .

"*Tubos interiores y neumáticos*.—Se considerará comprendido en las disposiciones de la ley todo tubo interior y neumático, sea cual fuere su condición, que se utilizare para cualquier vehículo de motor."

La Ley número 108, Leyes de Puerto Rico, 1936 ((1) pág. 567), enmendó nuevamente el párrafo 8 de la sección 16 de la Ley de Rentas Internas. La contribución sobre gomas y tubos se eliminó del párrafo 8 y se incluyó en un nuevo párrafo número 8A. Ambos párrafos, en sus partes pertinentes, dicen como sigue:

"8. '*Vehículos y aparatos de auto-impulsión*' *y lanchas y botes de motor*.—Sobre todo vehículo y aparato movido por propia impulsión, tales como automóviles, autovagones, camiones, locomotoras, tractores, autos de arrastre, motocicletas (sea cual fuere el nombre con que se conocieren), incluyendo chassis, motores, cuerpos de autos sin motor, tanques, baterías, . . . y sobre toda parte o accesorios para cualesquiera de los artículos aquí enumerados, excluyendo neu-

máticos, tubos interiores y gomas sólidas, que se vendan, traspasen, fabriquen, usen o introduzcan en Puerto Rico, un impuesto de diez (10) por ciento sobre el precio de venta en Puerto Rico, . . .''

''8.—A. *Neumáticos, tubos interiores para los mismos y gomas sólidas para vehículos de motor.*—Sobre todo neumático, tubos interiores para los mismos, y gomas sólidas para vehículos de motor que se vendan, traspasen, fabriquen, usen o introduzcan en Puerto Rico, un impuesto de doce y medio (12½) por ciento sobre el precio de venta.''

Afirman los demandantes y no niega el demandado que a través de todo este período,—es decir, desde 1925 hasta alguna época en 1942—el Tesorero interpretó el párrafo en cuestión como que se aplica sólo a gomas y tubos para vehículos de motor. Sobre las gomas y tubos para otros fines, tales como para ser usados en carros de bueyes, se imponía una contribución a razón del 2 por ciento de conformidad con la sección 62 de la Ley de Rentas Internas.

En 1941 hubo todavía otra enmienda a la ley. La Ley número 158, Leyes de Puerto Rico, 1941 ((1) pág. 949), promulgó de nuevo la sección 16 de la Ley de Rentas Internas. Los párrafos 8 y 8A fueron entonces numerados párrafos 7, 8, 9 y 10 y dicen como sigue:

''7. *Vehículos y aparatos de auto-impulsión.*—Sobre automóviles, motocicletas, locomotoras, tractores, y otros vehículos de propia impulsión de naturaleza semejante, (sea cual fuere el nombre con que se conocieren), incluyendo chassis, motores, cuerpos de autos sin motor. tanques, baterías, motores para los mismos, y sobre toda parte o accesorio para cualquiera de los artículos aquí enumerados, excluyendo neumáticos, tubos interiores y gomas sólidas, que se vendan, traspasen, fabriquen, usen o introduzcan en Puerto Rico, un impuesto de doce y medio (12½) por ciento sobre el precio de venta en Puerto Rico; . . . .

''8. *Otros vehículos y aparatos de auto-impulsión.*—Sobre auto vagones, camiones, y autos de arrastre y otros vehículos similares de auto-impulsión (sea cual fuere el nombre con que se conocieren), incluyendo chassis, motores, . . . y sobre toda parte o accesorio para cualquiera de los artículos aquí enumerados, excluyendo neumáticos, tubos interiores y gomas sólidas, que se vendan, . . . un impuesto de doce y medio (12½) por ciento . . .

"9. *Lanchas, yates y botes de motor.*—Sobre todo yate, lancha. ·

"10. *Neumáticos, tubos interiores para los mismos y gomas sólidas para vehículos de motor.*—Sobre todo neumático, tubos interiores para los mismos, y gomas sólidas para vehículos de motor que se vendan, traspasen, fabriquen, usen o introduzcan en Puerto Rico, un impuesto de doce y medio (12½) por ciento sobre el precio de venta.''

La Ley número 29, Leyes de Puerto Rico, 1941 ((1) pág. 469), derogó la sección 62 de la Ley de Rentas Internas. Como hemos visto, esta sección disponía una contribución de 2 por ciento para todos los artículos sobre los cuales la sección 16 no impusiere expresamente una contribución. Hasta dicha fecha el Tesorero, de conformidad con su propio Reglamento, aparentemente había estado cobrando sólo una contribución de 2 por ciento sobre gomas y tubos para carros de bueyes en la teoría de que la contribución mayor provista en la sección 16 se aplicaba solamente a gomas y tubos para vehículos de *motor*. Cuando la sección que imponía la contribución genérica del 2 por ciento fué derogada, el Tesorero concluyó que tales gomas y tubos estaban sujetos a la contribución mayor—que había aumentado del 7 al 10 al 12½ por ciento—provista en la sección 16. Según tenemos entendido, el Tesorero asumió esta posición sin hacer ningún cambio formal en su propio Reglamento arriba copiado, que disponía expresamente que la contribución mayor no se aplica a gomas y tubos como los aquí envueltos.

La corte de distrito, al dictar sentencia a favor del Tesorero, concluyó que el párrafo bajo consideración, según quedó enmendado en 1936 (párrafo 8A) y en 1941 (párrafo 10),(1) está sujeto a "una sola interpretación, o sea, que por las mismas se impone una contribución sobre todo neumático y tubos interiores para los mismos que se vendan, traspasen, fabriquen, usen o introduzcan en Puerto Rico, sean

---

(1)Las gomas y tubos aquí envueltos fueron importados en Puerto Rico durante el 1937, 1938 y 1939, y por tanto la contribución sobre los mismos no puede ser afectada por la enmienda de 1941. Sin embargo, dicho punto no es material aquí toda vez que la enmienda de 1941 no efectuó cambio alguno en el lenguaje de la Ley de 1936 en relación con la cuestión ante nos.

éstos para vehículos de motor, carretas de bueyes, "trailers", bicicletas, carretillas, o para ser usados en cualquier otro aparato que utilice neumáticos, ya que las mismas no establecen distinción de clase alguna, excepto la que se hace en cuanto a gomas sólidas para vehículos de motor.

"De acuerdo con la doctrina conocida como del 'último antecedente', las palabras, frases y cláusulas relativas o que modifican deben ser aplicadas a las palabras o frases que inmediatamente las preceden y no deben ser interpretadas en el sentido de extenderse a o incluir otras más remotas, y siendo ello así, la frase 'para vehículos de motor' en las secciones aquí transcritas es aplicable, únicamente, a las palabras 'gomas sólidas' que la anteceden, y no a la palabra y frase 'neumáticos' y 'tubos interiores para los mismos' (Véase: *Mayagüez Sugar Co. v. Carreras, Tesorero*, 59 D.P.R. 720; 59 C.J. 985)."

La corte de distrito abandonó el camino correcto cuando aplicó mecánicamente la doctrina del "último antecedente" como fórmula (*test*) única para determinar el significado del estatuto bajo su consideración. En manera alguna esta doctrina es la única fórmula de que disponen las cortes para determinar el significado de un estatuto. Crawford *on Statutory Construction,* dice a las páginas 331-2: "Sin embargo, no debe utilizarse esta regla de construcción hasta que otras más importantes hayan demostrado ser fútiles. Si hay algo en la ley indicativo de que la intención es que la palabra relativa o disposición modificadora se aplique a otras en vez del antecedente inmediatamente anterior, es obvio que la regla debe descartarse.

"Sin embargo, sólo es necesario una leve indicación para poder extender el alcance del término relativo. Tal extensión quizá podría exigirse por el significado natural y de sentido común de la ley, y en particular con el fin de evitar resultados absurdos o para impedir una desviación del evidente propósito de la Legislatura. Y cuando una cláusula o frase apa-

rece después de varias palabras a las cuales puede aplicarse de igual manera, de ser posible, deberá interpretarse como que se aplica a todas ellas.''

En el caso de *Mayagüez Sugar Co., Inc.,* tal como indicó la Corte de Circuito de Apelaciones para el Primer Circuito en *Buscaglia* v. *Bowie,* 139 F. (2) 294, (C.C.A. 1er Circuito, 1943) a la página 297, ''de haber decidido la Corte Suprema de Puerto Rico en otra forma, la ley prácticamente hubiera sido destruída como medida contributiva toda vez que sólo las mieles 'vendidas para consumo en Puerto Rico' o 'manufacturadas para consumo en Puerto Rico' estarían sujetas a contribución; y, siendo la producción de mieles una industria de exportación, la mayor parte del ingreso contemplado por la legislatura evadiría la contribución.''

El caso de *Bowie* contiene lenguaje aplicable al presente. La corte dice a la página 296:

''Encontramos apoyo para ella [la posición del demandado] en lo que se conoce como la doctrina del 'último antecedente' que exige en interpretación de estatutos que las palabras modificadoras, en ausencia de una intención en contrario, se apliquen de ordinario únicamente a las palabras o frases inmediatamente anteriores. Pero en primer lugar esto sería contrario al significado natural o de sentido común del estatuto. Como se dijo en Lewis, Sutherland *Statutory Construction,* Vol. 2, Sección 420:

'' 'Este principio [último antecedente] no tiene gran valor: sólo funciona cuando nada hay en el estatuto que indique que las palabras relativas o la disposición modificadora tiende a surtir un efecto diferente. Y una leve indicación del propósito legislativo o la lectura ordinaria y de sentido común de la ley, pueden eliminarla y darle una aplicación más comprensiva.'

''En el caso de *Great Western Ry.* v. *Swiden, etc. Ry.,* L. R. 9 App. Cas. 787, 808, se dijo que 'como cuestión de interpretación ordinaria cuando varias palabras aparecen seguidas por una expresión general que es aplicable tanto a la primera y a otras palabras como a la última, dicha expresión no se limita a la última, sino que se aplica a todas'.

''Esta última regla de interpretación estatutaria es seguida por la Corte Suprema en *Puerto Rico Ry., Light & Power Co.* v. *Mor,* 253

U.S. 345, 348, 40 S. Ct. 516, 518, 64 L. Ed. 944, donde dice: 'Cuando varias palabras aparecen seguidas por una cláusula que es aplicable tanto a la primera y a otras palabras como a la última, la interpretación natural del lenguaje exige que la cláusula se lea como aplicable a todas.' '' (Primer corchete nuestro).

En síntesis, todos los casos, incluyendo el de *Mayagüez Sugar Co. Inc.*, reconocen que la doctrina del "último antecedente" dista mucho de ser una regla absoluta. Esta corte, en el lenguaje que se encuentra a las páginas 719–24 del caso de *Mayagüez Sugar Co. Inc.*, en efecto aconseja cautela contra la aplicación general y universal de la doctrina del último antecedente.(²)

La "leve" indicación de un propósito contrario necesario para rendir inaplicable la doctrina del "último antecedente" concurre patentemente en este caso. En primer lugar, la historia legislativa de la ley a través de sus varias enmiendas indica el propósito de imponer contribución exclusivamente a las gomas y tubos que fueran a usarse en vehículos de motor. Puede ser, como afirma el apelado, que este propósito original se debiera al hecho de que en 1925 era raro el uso de gomas y tubos en vehículos que no fueran de motor. Pero cualesquiera que fueran sus razones, la Legislatura expresó claramente su intención a este respecto.

Es significativo, por ejemplo, que después de haber ordenado en 1925(³) una contribución sobre gomas de bicicleta—la única vez en que la contribución se impuso específicamente sobre un vehículo sin motor—la Legislatura mediante legislación de emergencia en su primera oportunidad—la Sesión Extraordinaria de 1926(⁴)—eliminó dicha contribución sobre gomas de bicicletas, restableciendo la situación mediante la

(²)Al mismo efecto, *Buras* v. *Fidelity & Deposit Co. of Maryland,* 1 So. (2) 552 (La., 1941); *Kelly* v. *State Personnel Board of California* 88 P. (2) 264 Calif., 1939).

(³)Ley número 85, Leyes de Puerto Rico, 1925 (pág. 401).

(⁴)Ley número 11, Leyes de Puerto Rico, (Sesión Extraordinaria), 1926 (pág. 31).

cual pagaban contribución solamente las gomas y tubos para vehículos de motor.

Como hemos visto el Tesorero adoptó formalmente un Reglamento-asumiendo esta posición; y nuestra atención no ha sido llamada hacia cambio alguno en este Reglamento desde que se adoptó en 1931.

Finalmente, el significado ordinario y natural de la cláusula en cuestión inevitablemente nos lleva a la conclusión de que la ley siempre ha dispuesto la contribución mayor sobre gomas y tubos únicamente para vehículos de motor. A nuestros fines, el lenguaje del párrafo pertinente de la sección 16 de la Ley de Rentas Internas ha permanecido substancialmente el mismo desde 1925 al 1941. Si la Legislatura hubiera intentado imponer la contribución mayor sobre gomas y tubos independientemente de su uso, hubiera sido fácil redactar el lenguaje a ese efecto. Sin embargo, la Legislatura ha dispuesto consistentemente que—citando la Ley de 1936, que es el estatuto que controla las transacciones ante nos—''sobre todo neumático, tubos interiores para los mismos, y gomas sólidas para vehículos de motor . . . un impuesto de doce y medio (12½) por ciento . . .''. Consideramos la anterior una oración simple e inequívoca proveyendo que una corta lista de artículos pagarán contribución si se usan ''para vehículos de motor''. Resolver en este caso que ''para vehículos de motor'' se aplica solamente a ''gomas sólidas'' sería, a nuestro juicio, altamente artificial e injustificado. Constituiría un flagrante mal uso de la doctrina del ''último antecedente'', y en efecto sería resolver que uno *nunca* puede poner una frase al final de una oración con la intención de que ésta modifique una lista de partidas anteriores, no importa lo pequeña que sea. Adoptar tal regla inexorable sería hacer caso omiso de las reglas familiares de gramática y cánones tradicionales de interpretación estatutaria. En vista de (*a*) el lenguaje claro del estatuto, (*b*) su historia legislativa, y (*c*) la interpretación adminis-

trativa ininterrumpida de conformidad con la misma,[5] no es de aplicación a este caso la doctrina del "último antecedente".[6]

*La sentencia apelada será revocada y se dictará una nueva sentencia a favor de los demandantes.*

[5] Si el significado del estatuto fuera dudoso o ambiguo, que no lo es, estaríamos llamados a considerar si bajo todas las circunstancias de este caso, debiéramos dar peso substancial o quizá decisivo al Reglamento del Tesorero. Indudablemente el tiempo ha venido a dar a los Reglamentos del Tesorero de Puerto Rico en casos contributivos el efecto y alcance descritos en *Helvering* v. *Griffiths,* 318 U.S. 371 a las páginas 395–6, y los casos allí citados (véanse también 1 Mertens, *Law of Federal Income Taxation,* Secciones 3.21, 3.22, págs. 87–93, y 1943 Cumulative Pocket Supplement; *Welch* v. *Bradley,* 130 F. (2) 109, (C.C.A. 1st, 1942) pág. 114, 115). Sin embargo, no es necesario que nos preocupemos con dicho problema en el presente caso, en vista de nuestra conclusión en cuanto al significado claro del estatuto aun sin la ayuda del Reglamento del Tesorero al mismo efecto.

[6] *Royal Indemnity Co.* v. *Puerto Rico Cement Corp.* 142 F. (2d) 237, resuelto por la Corte de Circuito de Apelaciones para el Primer Circuito el 5 de abril de 1944, sin mencionar la doctrina del "último antecedente" propiamente dicha, la aplica a los hechos de dicho caso debido a la historia legislativa del estatuto envuelto y ciertas consideraciones prácticas. En efecto el caso simplemente reitera la regla de que depende de todas las circunstancias concurrentes el que la doctrina del "último antecedente" sea de aplicación en un caso específico. En el presente caso dichas circunstancias demuestran lo contrario.