[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 11, 2007
THOMAS K. KAHN
CLERK

No. 06-12727

D. C. Docket No. 05-10021-CR-SH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

YOSDANI CHAVEZ LA ROSA,
JORGE LUIS GARCIA JULIA,

Defendants-Appellants.

Appeals from the United States District Court
for the Southern District of Florida

**(September 11, 2007)**

Before DUBINA and MARCUS, Circuit Judges, and COOGLER,* District Judge.

PER CURIAM:

_____
*Honorable L. Scott Coogler, United States District Judge for the Northern District of Alabama,
sitting by designation.

Yosdani Chavez La Rosa ("Chavez La Rosa") and Jorge Luis Garcia Julia ("Garcia Julia") were jointly charged with forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a United States Customs and Border Protection Marine Enforcement Officer ("MEO"), a person designated in 18 U.S.C. § 1114, while such officer was engaged in or on account of the performance of his official duties. 18 U.S.C. § 111(a). Garcia Julia was also charged with one count of using a deadly and dangerous weapon, a speed-boat, to do the above. 18 U.S.C. § 111(a), (b). They were subsequently convicted by a jury.

Multiple issues are raised in this consolidated appeal. Both co-defendants argue that the evidence presented at trial was insufficient to sustain their convictions and that the district court abused its discretion by permitting the government to present testimony that a Global Positioning System ("GPS") receiver found onboard the boat upon which they were arrested contained tracking points showing travel from Florida to Cuba. Additionally, Garcia Julia contends that the district court (1) abused its discretion by denying his motion *in limine* to exclude evidence of alien smuggling; (2) erroneously instructed the jury on the definition of "forcible assault"; and (3) erred in overruling his objection to a sentence enhancement under U.S.S.G. § 2A2.2(b)(3)(A) for an injury suffered by a

2

federal officer during the offense conduct. We now consider each of these arguments in turn.

**I.**

We review a claim of insufficient evidence to convict *de novo*. *United States v. Nolan*, 223 F.3d 1311, 1314 (11th Cir. 2000). We view the evidence in the light most favorable to the government and affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quotation and citation omitted). We review *de novo* the denial of a motion for a judgment of acquittal, applying the same standard that is used in reviewing the sufficiency of the evidence. *United States v. Descent*, 292 F.3d 703, 706 (11th Cir. 2002).

Under 18 U.S.C. § 111(a),

[w]hoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties . . . shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than 8 years or both.

18 U.S.C. § 111(a).

Section 111(a) does not define "assault"; therefore, we define the term in accordance with its meaning at common law. *United States v. Williams*, 197 F.3d

1091, 1096 (11th Cir. 1999). Simple assault at common law is defined as "a willful attempt to inflict injury upon the person of another, or . . . a threat to inflict injury upon the person of another which, when coupled with an apparent present ability [to do so], causes a reasonable apprehension of immediate bodily harm." *United States v. Fallen*, 256 F.3d 1082, 1088 (11th Cir. 2001) (quotation and citation omitted). We have noted that forcible assault, therefore, must be something more than mere simple assault, "such as a willful attempt or threat to inflict *serious* bodily injury, coupled with an apparent present ability [to do so], which causes the intended victim a reasonable apprehension of immediate *serious* bodily harm *or death*." *Id.* (emphasis in original) (finding sufficient evidence supported a conviction for forcibly assaulting two federal officers, under 18 U.S.C. § 111(a), where the defendant threatened to use a gun against two federal agents, although the agents did not actually see the firearm). Forcible assault has also been defined as "any willful threat or attempt to inflict bodily injury upon the person of another when coupled with an apparent present ability to do so, and includes any intentional display of force such as would give the victim reason to fear or expect immediate bodily harm." *Id.* at 1087 (quotation, citation, and emphasis omitted).

We have also held that "[t]he word 'forcibly' in section 111 means only that some amount of force must be used." *United States v. Fernandez*, 837 F.2d 1031, 1033-35 (11th Cir. 1988) (affirming conviction under 18 U.S.C. § 111 where defendant, who chased a prosecutor down a street and bumped and pushed him, shouted profanities at him, told him to get someone to protect himself, and repeatedly warned him to "watch [his] back," argued that evidence of forcible assault was lacking). Proof of physical contact is not required to violate 18 U.S.C. § 111. *Fallen*, 256 F.3d at 1087. Additionally, 18 U.S.C. § 111 is a "general intent" statute. *See United States v. Ettinger*, 344 F.3d 1149, 1154 (11th Cir. 2003).

As the district court noted in instructing the jury, "forcibly" as used in 18 U.S.C. § 111(a), applies not only to assaulting, but also to resisting, opposing, impeding, intimidating, and interfering with a federal officer. *Cf. Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348, 40 S. Ct. 516, 518 (1920) ("When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.").

At trial, the evidence was sufficient to demonstrate beyond a reasonable doubt that, although Chavez La Rosa had access to the speed-boat's controls,

5

Garcia Julia was the driver at all times. When the MEOs, who were also operating a high-powered boat, attempted to stop Garcia Julia, who was piloting the speed-boat at night without the required navigational lights, Garcia Julia fled, attempted to evade the MEOs, and, when his evasion efforts failed, twice rammed the speed-boat he was driving into the MEOs' vessel, causing serious damage to both boats, injuring one of the MEOs, and nearly knocking another MEO overboard. On these facts, a rational trier of fact would have been able to find that, by piloting the fugitive speed-boat into the MEOs' boat twice, Garcia Julia made a willful attempt to inflict serious bodily injury or threatened to do so with a dangerous vessel, and the MEOs onboard suffered a reasonable apprehension of immediate bodily harm or death. Garcia Julia certainly used "some amount of force" in taking this action; therefore, his actions were forcible. *Fernandez*, 837 F.2d at 1033-35. Assuming, *arguendo*, that Garcia Julia's actions could not be considered forcible assault, they undoubtedly constituted forcibly resisting or forcibly impeding the MEOs' attempt to stop the boat he was piloting with the use of a deadly and dangerous weapon, a 28-foot boat traveling at 50 miles per hour.

The evidence further demonstrated that, after the MEOs were eventually able to board the fugitive vessel, Garcia Julia struggled and was restrained only after being subdued with pepper spray. Despite being fully handcuffed, Garcia

6

Julia kicked and struck one of the MEOs in the shin. This, too, constituted the use of "some amount of force" while resisting arrest. Accordingly, we conclude that sufficient evidence supported Garcia Julia's convictions, and the district court did not err in denying his motions for a judgment of acquittal. *See Descent*, 292 F.3d at 706; *Nolan*, 223 F.3d at 1314.

Chavez La Rosa likewise forcibly resisted arrest. According to the evidence, taken in a light most favorable to the verdict, Chavez La Rosa struggled while the MEOs attempted to restrain him. Indeed, the law enforcement officers were forced to throw him to the ground in order to subdue him. Therefore, we hold that the evidence was sufficient to support his conviction as well.[1]

## II.

The defendants challenge the district court's decision to admit evidence, such as extra gasoline containers and tracking coordinates discovered on a mobile GPS receiver, that suggests that they had been engaged in smuggling undocumented persons from Cuba to the United States. They contend that such evidence is not relevant to the crimes charged. We disagree.

---

[1] Our view that § 111's "forcibl[e]" requirement is satisfied by the use of a minimal amount of force renders it unnecessary to determine whether the district court erred by not defining "forcibly" in its jury instructions. Assuming it was error, the error was harmless. Because the use of minimal force is sufficient, the term "forcibly" is self-defining. *Cf. United States v. Drury*, 396 F.3d 1303, 1314 (11th Cir. 2005) ("Plainly, a jury instruction that omits an element of the charged offense . . . is subject to harmless error analysis.").

We review the district court's evidentiary rulings regarding admission of evidence for an abuse of discretion. *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000). "In reviewing issues under [Fed. R. Evid.] 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002) (quotations and citation omitted).

Under the Federal Rules of Evidence, all relevant evidence not otherwise deemed inadmissible is admissible, and irrelevant evidence is inadmissible. Fed. R. Evid. 402. "The standard for what constitutes relevant evidence is a low one: evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Tinoco*, 304 F.3d at 1120 (quoting Fed. R. Evid. 401). Nonetheless, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 650 (1997). One such ground

is that the defendant committed uncharged crimes. *Id.* at 180-81, 117 S. Ct. at 650.

However, "Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and [t]he balance . . . should be struck in favor of admissibility." *Tinoco*, 304 F.3d at 1120 (internal quotations and citation omitted). "The major function of Rule 403 is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Cross*, 928 F.2d 1030, 1048 (11th Cir. 1991) (internal quotations and citation omitted). In determining whether to exclude evidence under Rule 403, district courts may consider the presence or absence of evidentiary alternatives. *Old Chief*, 519 U.S. at 184, 117 S. Ct. at 652.

Under Fed. R. Evid. 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." "Evidence of criminal activity other than the offense charged is not extrinsic under Rule 404(b) if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably

intertwined with the evidence regarding the charged offense." *United States v. Veltmann*, 6 F.3d 1483, 1498 (11th Cir. 1993).

We conclude that the evidence offered by the government to suggest that the defendants were engaged in alien smuggling was relevant because it demonstrated the defendants' possible motivation for being in a go-fast boat at night without the boat's lights on, for fleeing federal officers by maneuvering the boat in a dangerous manner, and for resisting arrest after repeated warnings. *See Tinoco*, 304 F.3d at 1120. If the government had been barred from introducing this evidence, the jury would have been left without a rational explanation for the defendants' dangerous behavior before, during, and after the pursuit. Therefore, for this reason and because it was necessary to complete the story of the crime, the evidence is not barred by Rule 404(b). *See Veltmann*, 6 F.3d at 1498. Similarly, with respect to Rule 403, the evidence was not unfairly prejudicial, especially considering that alternative evidence was not available and neither defendant stipulated to engaging in alien smuggling. *Old Chief*, 519 U.S. at 184, 117 S. Ct. at 652. Accordingly, its admission by the district court was not an abuse of discretion.[2]

---

[2] Even if we were to assume, *arguendo*, that Chavez La Rosa is correct that tracking coordinates dated two days before the incident are irrelevant, the district court's error in admitting the coordinates was harmless nonetheless. Even applying the least deferential

10

**III.**

Describing "forcible assault" as the "crux of both of the charges against both defendants," Garcia Julia also contends that the district court erred when it refused to include in its instructions to the jury the Eleventh Circuit pattern jury instruction defining the term "forcible assault." The Eleventh Circuit Pattern Criminal jury instructions for Offense Instruction 1.1 (misdemeanor assault) and Offense Instruction 1.2 (felony assault with use of a deadly weapon) define forcible assault as follows:

> The term "forcible assault" means any willful threat or attempt to inflict serious bodily injury upon someone else, when coupled with an apparent present ability to do so, and includes any intentional display of force that would give a reasonable person cause to expect immediate and serious bodily harm or death even though the threat or attempt is not actually carried out and the victim is not actually injured.

Instead, the district court provided the jury with the pattern instructions for applying 18 U.S.C. § 111(a), (b) without defining the term "forcible assault." The district court then instructed the jury that the statutory term "forcibly" applies to all of the acts specified in § 111(a), i.e. assault, resist, oppose, impede, intimidate,

---

harmless review analysis, the defendants have failed to demonstrate that there is "a reasonable possibility that the evidence complained of might have contributed to the conviction." *Hart v. Attorney Gen. of the State of Fla.*, 323 F.3d 884, 895 (11th Cir. 2003) (quoting *Fahy v. Connecticut*, 375 U.S. 85, 86-87, 84 S. Ct. 229, 230 (1963)).

11

or interfere. The district court did not abuse its discretion when denying the defendants' requested instruction.

We review the district court's refusal "to give a defendant's requested jury instruction for abuse of discretion." *United States v. Chirinos*, 112 F.3d 1089, 1101 (11th Cir. 1997). Generally, refusing to give a requested jury instruction is an abuse of discretion where the instruction is: "(1) correct; (2) not substantially covered by other instructions that were given; and (3) so vital that failure to give the requested instruction seriously impaired the defendant's ability to defend himself." *Fallen*, 256 F.3d at 1090 (quotation and citation omitted). "[W]e examine whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled." *Bogle v. McClure*, 332 F.3d 1347, 1357 (11th Cir. 2003).

The defendants' argument overlooks the fact that they were charged not simply with "forcible assault" but with violating § 111(a), which includes numerous actions short of assault, and, in Garcia Julia's case, § 111(b), which incorporates all of the actions outlined in § 111(a). Therefore, the district court's instruction reflected a correct statement of the law. Furthermore, the pattern instruction sought by Garcia Julia was not "so vital that failure to give the requested instruction seriously impaired [his] ability to defend himself" because

12

one count was based on a clear use of intentional force, twice crashing the fleeing boat into the MEOs' boat, and the other involved a use of force by Garcia Julia after he had been handcuffed, kicking and striking an MEO in the shin. Additionally, the district court's failure to give the instruction did not prevent the jury from considering Garcia Julia's basic claim at trial that the crashes he caused were accidents because, otherwise, they would have been akin to attempted suicide.

*Fallen* involved a district court's refusal to give the exact pattern instruction that is at issue in the present case. 256 F.3d at 1090. In that case, however, the court specifically defined "forcible assault," although it gave an alternative definition. *Id.* We found no abuse of discretion, holding that the district court's instruction was "a correct statement of the law." *Id.* Although the district court's instruction in the present case was also a correct statement of law, unlike in *Fallen*, the district court did not specifically define the term "forcibly." Nevertheless, as we noted *supra* in footnote one, that term, which requires only the use of minimal force, is self-defining and, therefore, the definition is not "so vital that failure to give the [definition] seriously impaired the defendant's ability to defend himself."

**IV.**

While pursuing the defendants, the MEOs were forced to take evasive action to counter Garcia Julia's efforts to ram his boat into theirs. After Garcia Julia succeeded in ramming the MEOs' vessel one time, and while the extremely dangerous chase continued, one of the MEOs crushed his finger while attempting to secure ammunition from his boat's forward cabin. Consequently, the district court increased Garcia Julia's offense level by three levels pursuant to U.S.S.G. § 2A2.2(b)(3)(A) (2005), which addresses injuries resulting from "aggravated assault." Garcia Julia contends this was error. We disagree.

"This court reviews the district court's findings of fact for clear error and its application of the sentencing guidelines to those facts *de novo*." *United States v. Humber*, 255 F.3d 1308, 1311 (11th Cir. 2001).

Under U.S.S.G. § 2A2.2(b)(3)(A) (2005), a defendant who commits an aggravated assault that causes a victim to sustain bodily injury should have his offense level increased by three levels. "'Aggravated assault' means a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (*i.e.*, not merely to frighten) with that weapon; (B) serious bodily injury; or (C) an intent to commit another felony." *Id.*, comment (n.1). Specific offense characteristics are determined based on "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the

14

defendant . . . that occurred during the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . [and] all harm that resulted from the[se] acts and omissions. . . ." U.S.S.G. § 1B1.3(a)(1), (3) (2005).

The injury at issue occurred after warning shots were fired and after Garcia Julia had collided his boat into the MEOs' boat and continued to make aggressive turns that required the MEO commander to take evasive actions to avoid a collision. Therefore, the injury occurred while Garcia Julia was carrying out his felonious assault against the MEOs, and the enhancement was properly applied. Accordingly, we affirm Chavez La Rosa's conviction and Garcia Julia's convictions and sentences.

**AFFIRMED.**