MARK VUKUSICH et al., Plaintiffs-Appellees, v. COMPREHENSIVE ACCOUNTING CORPORATION et al., Defendants-Appellants (Ronald Mercer, Defendant).

Second District   No. 2—86—0530

Opinion filed December 11, 1986.

Marc P. Seidler, of Rudnick & Wolfe, of Chicago, and Rex C. Denkmann and Joyce L. Logan, both of Comprehensive Accounting Corporation, of Aurora, for appellants.

Peter K. Wilson and Bernard K. Weiler, both of Puckett, Barnett, Larson, Mickey, Wilson & Ochsen, of Aurora, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:
Defendants, Comprehensive Accounting Corporation (CAC), Leo

Lauzen, A. T. Finkle, and Edward D. Muse, appeal from the judgment of the circuit court of Kane County compelling arbitration only between CAC and the plaintiffs, Mark and Dawn Vukusich (the Vukusichs), and denying their motion to stay the litigation against all of the defendants pending the arbitration. Defendant Ronald Mercer is not a party to this appeal.

CAC is a franchisor of bookkeeping, accounting, and tax services. On or about June 17, 1983, the Vukusichs entered into a franchise agreement with CAC whereby they were licensed to use the Comprehensive Accounting trademarks, service marks, and business system in connection with the promotion and conduct of a Comprehensive Accounting practice in return for the payment of certain franchise fees and the performance of other obligations. The franchise agreement required mandatory and binding arbitration; to wit:

"Any and all disputes or controversies, whether of law or fact, of any nature whatsoever, arising from or respecting this agreement, shall be decided by arbitration by the AMERICAN ARBITRATION ASSOCIATION ('Arbitrator') and in accordance with the rules and regulations of said Association."

A dispute arose between the Vukusichs and CAC, and CAC filed a demand for arbitration on December 18, 1985, alleging various breaches of the franchise agreement and seeking relief on account of those breaches. In response to CAC's demand for arbitration, the Vukusichs filed a "Statement of Additional Claim," asserting, *inter alia,* that the execution of the franchise agreement was induced by fraudulent misrepresentations made to them by CAC and its agents and employees. The Vukusichs' claim sought rescission of the franchise agreement and the return to them of all sums paid to CAC plus any appropriate damages and attorney fees and costs.

Shortly after filing their additional claim in arbitration, the Vukusichs filed the instant suit in the circuit court of Kane County. In their complaint, they alleged that defendant Ronald Mercer, acting as an employee, subfranchisor, and agent of CAC for the purpose of recruiting subfranchisees, made false representations concerning the business opportunity being offered to them by CAC which induced them to purchase the franchise. In count I of their complaint, the Vukusichs alleged that the foregoing course of conduct was in violation of the Franchise Disclosure Act (Ill. Rev. Stat. 1985, ch. 121½, par. 701 *et seq.*); that notice of their election to void the franchise agreement had been served on each of the defendants as provided in section 21(b) of the Franchise Disclosure Act; and that they were entitled to recover damages in an amount in excess of $15,000 from CAC on account of

Mercer's misconduct as its employee and from defendants Lauzen, Finkle, and Muse solely on the basis of their status as persons who "directly or indirectly control persons liable under section [21] of the [Franchise Disclosure] Act" or are "principal executive officers or directors" of CAC. In count II, the Vukusichs sought damages from Mercer and CAC for common law fraud on the theory that Mercer acted as CAC's agent and employee.

In light of the franchise-agreement arbitration clause, CAC filed a motion to compel arbitration and to stay all further proceedings in the lawsuit pending that arbitration, pursuant to section 2 of "AN ACT relating to arbitration and to repeal an Act therein named" (the Uniform Arbitration Act) (Ill. Rev. Stat. 1985, ch. 10, par. 102). After briefing and argument, the trial court entered an order on May 15, 1986, finding that the Vukusichs' complaint set forth claims for fraud in the inducement under the terms of the Franchise Disclosure Act and under common law; that the parties' franchise agreement provided for mandatory arbitration of any controversy arising out of or relating to the agreement; that the broad language of the arbitration clause and public policy favored the inclusion of fraud in the inducement among those types of disagreements subject to arbitration; that there appeared to be no authority which would exempt actions under the Franchise Disclosure Act from that policy; and that the codefendants were not signatories to the agreement nor did they and the Vukusichs agree to be bound by any arbitration. Accordingly, the court ordered the litigation stayed as to CAC only, and it enjoined the Vukusichs from proceeding against CAC during the pendency of the arbitration proceedings. As noted, CAC, Lauzen, Finkle, and Muse appeal from that order.

The appellants, who for the most part will be referred to collectively as CAC in the discussion which follows, contend (1) that the court erred in finding the claims against the individual defendants to be nonarbitrable because they were not signatories to the agreement to arbitrate and (2) regardless of whether the plaintiffs were bound to arbitrate their claims against Lauzen, Finkle, and Muse, that the court erred in refusing to stay the litigation as to all defendants pending arbitration.

At the outset, CAC notes that it is clear the Vukusichs' claim that they were fraudulently induced to enter into the contract with it falls within the scope of the arbitration clause contained in the franchise agreement between them. It is conceded that the individual defendants were not signatories to that franchise agreement. CAC contends, however, that in the instant case each of the individual defendants

was alleged by the Vukusichs to be an employee and agent of CAC. Thus, CAC asserts, the claims against the individual defendants arise from acts allegedly undertaken in the scope of their employment or involved liability imposed upon them vicariously by statute as a consequence of their status with the corporate signatory, CAC. Accordingly, CAC argues, because the Vukusichs' claims against the individual defendants are all in substance claims against it as the real party in interest, the Vukusichs should not be permitted to assert in a judicial forum claims which they have agreed to arbitrate. In support, CAC cites several foreign-jurisdiction cases: *In re Oil Spill by the "Amoco Cadiz"* (7th Cir. 1981), 659 F. 2d 789; *Barrowclough v. Kidder, Peabody & Co.* (3rd Cir. 1985), 752 F. 2d 923; and *Chilean Nitrate Sales Corp. v. The Nortuna* (S.D.N.Y. 1955), 128 F. Supp. 938.

The Vukusichs assert the trial court correctly held that the violations of the Illinois Franchise Disclosure Act alleged against the individual defendants were not arbitrable because there was no written arbitration agreement between themselves and such defendants. In support of their argument that without a written agreement to arbitrate, no right to arbitrate can be implied nor can there be any arbitrable issues, they cite *Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91; *Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (1969), 109 Ill. App. 2d 224; and *Lehman v. Eugene Matanky & Associates, Inc.* (1982), 107 Ill. App. 3d 985. They point out the Franchise Disclosure Act gives an aggrieved party separate and distinct rights of recovery against a corporation *and* its individual officers and employees and, in the absence of an agreement to arbitrate, no arbitrable issue is presented. Thus, they have a right to seek redress from the courts as to these individual defendants. The Vukusichs additionally dispute CAC's assertion that the issue of fraud in the inducement is arbitrable, contending that Illinois law does not provide that provisions of a contract entered into by fraudulent inducement are separable; that is, if fraud exists, the entire contract is void. Finally, the Vukusichs question whether CAC's use of the term "all defendants" is meant to include defendant Mercer as well. The Vukusichs point out they had a separate contract with Mercer, he is represented by separate counsel, and he has not appealed from the trial court's order. Accordingly, they assert, this court's ruling should in no way pertain to their suit against him.

CAC replies, pointing out that the Vukusichs have neither addressed nor rebutted its "real party in interest" analysis whereby nonsignatories were found to be bound by an agreement to arbitrate where the real party in interest in the claim was a party to the con-

tract containing the arbitration provision. Moreover, it distinguishes cases cited by the Vukusichs in support of their argument on the basis those cases deal with whether particular issues are arbitrable, not whether particular parties may enforce or be bound by an arbitration provision. CAC vigorously reasserts its preliminary contention that the issue of whether there was fraud in the inducement of the contract is an arbitrable issue. It notes the trial court's judgment specifically found so, and no cross-appeal was filed by the Vukusichs. Consequently, no question as to this issue may be raised here. In response to the Vukusichs' contention regarding defendant Mercer, CAC points out that in both counts of the Vukusichs' complaint against CAC for fraud in the inducement, they have alleged, *inter alia*, that Mercer's actions as to them were performed in his capacity as an employee or agent of CAC. Accordingly, CAC contends, since the complaint against Mercer involves the fraud issue, which is subject to arbitration, the court has no discretion to deny a stay of the litigation as to defendant Mercer. In support, it cites section 2 of the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 102(d)) and *Kelso-Burnett Co. v. Zeus Development Corp.* (1982), 107 Ill. App. 3d 34.

■ Initially, we agree that the Vukusichs may not challenge the court's finding that the issue of fraud in the inducement is arbitrable. Although it is the general rule that an appellee may advance any argument in support of the court's judgment (*Ozment v. Lance* (1982), 107 Ill. App. 3d 348), the Vukusichs' argument is not supportive of the court's judgment since its finding that the issue of fraud in the inducement is arbitrable is the basis for its judgment compelling arbitration between CAC and the Vukusichs.

In *Cleys v. Village of Palatine* (1980), 89 Ill. App. 3d 630, 635, it was stated that "where a general decision for the appellee contains a specific finding unfavorable to him and he fails to file a cross-appeal, the adverse finding is not properly before the reviewing court." Also, in *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, it was stated that "[f]indings of the trial court adverse to the appellee do not require the appellee's cross-appeal if the judgment of the trial court was not at least in part against the appellee." It is clear in the instant cause that the judgment of the trial court was, at least in part, against the Vukusichs, and their cross-appeal was necessary in order to raise this issue. *Cf. Management Recruiters of O'Hare, Inc. v. Process & Environmental Equipment Unlimited, Inc.* (1985), 137 Ill. App. 3d 513, 519-20 (where the court found the appellee was not required to file a cross-appeal where the judgment of the trial court was completely in favor of the appellee).

Accordingly, we find the trial court's judgment that the matter of fraud in the inducement is an arbitrable issue under the instant arbitration clause is not open to the challenge posed by the Vukusichs.

■ Turning to CAC's contention that the court erred in finding the claims against the individual defendants were nonarbitrable, we find that the court was correct in refusing to compel arbitration between the Vukusichs and these individual defendants.

■ It is well settled that a nonparty to an arbitration agreement can neither compel arbitration (*Board of Education v. Meridian Education Association* (1983), 112 Ill. App. 3d 558; *Property Management, Ltd. v. Howasa, Inc.* (1973), 14 Ill. App. 3d 536), nor be compelled to arbitrate (*Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91; *Wigod v. Chicago Mercantile Exchange* (1986), 141 Ill. App. 3d 129; *Mid-America Regional Bargaining Association v. Modern Builders Industrial Concrete Co.* (1981), 101 Ill. App. 3d 83). Although it is conceded that Lauzen, Finkle, and Muse were not signatories of the franchise agreement, CAC contends that under a "real party in interest" analysis, these nonsignatories were subject to arbitration. CAC asserts these individual defendants were named in the suit "not because of any wrongdoing on their part, but because they were alleged agents and employees of Comprehensive occupying a particular status with the company giving rise to vicarious liability for alleged corporate violations." Because CAC would be bound to indemnify these individual defendants not only for any judgment obtained against them, but also for the costs of their defense (see, *e.g.*, *Moricoli v. P & S Management Co.* (1982), 104 Ill. App. 3d 234; *Johnston v. Suckow* (1977), 55 Ill. App. 3d 277; Ill. Rev. Stat. 1985, ch. 32, par. 8.75), CAC contends it is the real party in interest and that the agreement between itself and the plaintiffs to arbitrate should apply with equal force to claims nominally made against its agents.

The term "real party" has been defined as follows:

"In statutes requiring suits to be brought in the name of the 'real party in interest,' this term means the person who is actually and substantially interested in the subject-matter, as distinguished from one who has only a nominal, formal, or technical interest in it or connection with it. [Citations.]" Black's Law Dictionary 1278 (4th ed. 1951).

As the Vukusichs correctly point out, section 21 of the Franchise Disclosure Act (Ill. Rev. Stat. 1983, ch. 121½, par. 721) gives an aggrieved party separate and distinct rights of recovery against a franchisor *and* its individual officers and employees. Section 21 provides, in pertinent part:

"Any franchisee or subfranchisor may bring an action for violation of this Act to recover damages sustained by reason of such violation against the franchisor, subfranchisor, franchise broker or salesperson or other person by or on behalf of whom such sale was made or who shall have participated or aided in any way in making such sale. \*\*\*

(2)(a) Every sale of a franchise made in violation of this Act shall be voidable at the election of the franchisee or subfranchisor as provided in subsection (b) of this Section. The franchisor, subfranchisor, franchise broker, salesperson or other person on behalf of whom such sale was made or who shall have participated or aided in any way in making such sale shall be jointly and severally liable to such franchisee or subfranchisor for (1) the full amount paid, together with interest at the legal rate from the date of payment less any income received on the franchise and (2) reasonable attorney's fees.

\* \* \*

(3) Every person who directly or indirectly controls a person liable under Section 21(1) and (2), every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless said person who otherwise is liable had no knowledge or reasonable basis to have knowledge of the facts, acts or transactions constituting the alleged violation." Ill. Rev. Stat. 1985, ch. 121½, pars. 721(1), (2)(a), (3).

This last subsection makes it clear that the potential liability imposed thereunder is individual liability against "every principal executive officer or director of a corporation" liable under sections 21(1) and (2) "who materially aids in the act or transaction constituting the violation." Such officer or director is individually "liable jointly and severally with and to the same extent" as the corporation unless the officer or director "had no knowledge or reasonable basis to have knowledge of the facts, acts or transactions constituting the alleged violation." (Ill. Rev. Stat. 1985, ch. 121½, par. 721(3).) The Vukusichs' claim of fraud in the inducement falls within the fraudulent practices prohibited under section 6 of the Franchise Disclosure Act (Ill. Rev. Stat. 1985, ch. 121½, par. 706). Accordingly, if CAC is found liable for the alleged violation of section 6, Lauzen, Finkle, and Muse may

also be found jointly and severally liable with CAC unless they had no knowledge or reasonable basis to have knowledge of the facts, acts, or transactions constituting the alleged violation.

In *National Acceptance Co. v. Pintura Corp.* (1981), 94 Ill. App. 3d 703, 706, it was stated:

> "One of the purposes of a corporate entity is to immunize the corporate officer from individual liability on contracts entered into in the corporation's behalf. In contrast, although the officer is not liable for the corporation's torts simply by virtue of his office, corporate officer status does not insulate him from individual liability for the torts of the corporation in which he actively participates. [Citations.] Thus a corporate officer may be liable for the negligence of the corporation [citation]; for fraud [citation]; trespass to realty [citation]; wilfully inducing breach of contract [citation]; and conversion [citation]."

In *Murphy v. Walters* (1980), 87 Ill. App. 3d 415, 418-19, this court cited the general rule as set forth in *Citizens Savings & Loan Association v. Fischer* (1966), 67 Ill. App. 2d 315, 322-23:

> " 'As a general rule a corporate officer or director is not liable for the fraud of other officers or agents merely because of his official character, but he is individually liable for fraudulent acts of his own or in which he participates. [Citation.] The mere fact that a person is an officer or director does not per se render him liable for the fraud of the corporation or of other officers or directors. He is liable only if he with knowledge, or recklessly without it, participates or assists in the fraud. [Citations.]' "

■ We find the individual defendants are the "real parties in interest" under section 21(3), and accordingly, we find CAC's argument to the contrary unpersuasive and its cited authorities from foreign jurisdictions inapposite. Because the individual defendants were not parties to the franchise agreement requiring arbitration between CAC and the Vukusichs, they cannot compel arbitration between themselves and the Vukusichs. "The status of a person or entity entitled to compel arbitration is, like the status of an issue as arbitrable, determined from the language of the agreement giving rise to the arbitration. *Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 242 N.E.2d 149." *Board of Education v. Meridian Education Association* (1983), 112 Ill. App. 3d 558, 563.

In *Meridian*, the court found the arbitrator exceeded his authority in accepting arbitration of a dispute there between substitute teachers and the school board where, although the substitute teachers

were arguably covered by a nonreprisal clause in the collective-bargaining agreement, they were not parties to the collective-bargaining agreement. The parties to the agreement were the school district and the Meridian Education Association (MEA), which was recognized by the district in the agreement " 'as the exclusive and sole negotiation agent for all regularly employed full-time certificated teaching personnel, except the Superintendent, Assistant Superintendent, Principals, and other central office professional staff.' " (112 Ill. App. 3d 558, 560.) The MEA filed a grievance with the superintendent on behalf of the substitute teachers based on the nonreprisal clause of the collective-bargaining agreement, which grievance ultimately proceeded to arbitration and award. In vacating the award, the court found that although the MEA signed the collective-bargaining agreement, it did not do so as a representative of the substitute teachers, who, the court found, were the real parties in interest. The court stated:

"If we accept the MEA as a proper party to compel arbitration of the substitutes' grievance, we would endorse a fiction to allow the substitutes to do what they could not do under their own names. The real parties in interest to these proceedings are beyond doubt the substitutes themselves rather than the MEA." 112 Ill. App. 3d 558, 563.

Although CAC may ultimately be required to indemnify the individual defendants according to the provisions of section 8.75 of the Business Corporation Act of 1983 (Ill. Rev. Stat. 1985, ch. 32, pars. 8.75(a), (b), (d)), CAC must indemnify them against their expenses and attorney fees only in the event they are "successful, on the merits or otherwise," in the defense of the action against them (Ill. Rev. Stat. 1985, ch. 32, par. 8.75(c)). See *Johnson v. Gene's Supermarket, Inc.* (1983), 117 Ill. App. 3d 295, 299.

For these reasons, we find no error in the trial court's refusal to compel arbitration between the Vukusichs and these individual defendants.

■ We do find, however, that the court abused its discretion in refusing to stay the litigation as to all the defendants, including defendant Mercer, pending arbitration.

Section 2 of the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 102(d)) provides:

"Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this Section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order

for arbitration shall include such stay."

In *Kelso-Burnett Co. v. Zeus Development Corp.* (1982), 107 Ill. App. 3d 34, 41, this court had occasion to consider the import of that section, and found that it

> "provided the court with discretion to choose one of two options: it *may* stay the *entire* proceeding pending arbitration, or, if the arbitrable issue is *severable*, the stay *may* be with respect thereto only. These two options are also open to a court in the exercise of its discretion under section 2(d) where the arbitrable and nonarbitrable issues, although severable, are also interrelated in terms of a complete resolution of the cause between the parties. *Farris v. Hedgepeth* (1978), 58 Ill. App. 3d 1041." (Emphasis in original.)

Accord, *First Condominium Development Co. v. Apex Construction & Engineering Corp.* (1984), 126 Ill. App. 3d 843, 849.

The Vukusichs do not respond to CAC's argument in support of its contention that the litigation against Lauzen, Finkle, and Muse should have been stayed pending the arbitration, and we view this failure to respond as a concession of the point as to these individual defendants. The Vukusichs do argue, with no citation of authority, that the cause should not be stayed as to defendant Mercer because "[v]ery separate and distinct claims were made against defendant, Mercer, in plaintiffs' complaint." Further, the Vukusichs argue they had a separate contract with Mercer (which does not appear in the record), that Mercer is represented by separate counsel, and he is not a party to the appeal.

■ We agree with CAC, however, that the scope of the stay provided for in section 2 of the Uniform Arbitration Act is defined by the identity and interrelationship of the issue or issues subject to arbitration and those involved in the litigation. The claim subject to arbitration here is whether the Vukusichs were induced to execute the franchise agreement by virtue of fraudulent misrepresentations made to them by CAC and CAC's agents and employees. Count·I of the Vukusichs' complaint was brought against all the defendants, including Mercer, pursuant to section 21 of the Franchise Disclosure Act. It alleged they were fraudulently induced by Mercer, a subfranchisor and employee of CAC, to enter into employment with Mercer as their sponsor·and to sign a franchise agreement with CAC. Count I further alleged that the conduct of defendant Mercer was violative of section 6 of the Franchise Disclosure Act and was known or reasonably should have been known by the other defendants. Count II, brought against CAC and Mercer, was for common law fraud. It alleged Mer-

cer acted "not only individually, but also as an agent and employee of the defendant, Comprehensive."

It is clear Mercer was joined as a defendant in both these counts. Further, the fraudulent-inducement issue is integral in both the arbitration and the litigation proceedings, and CAC's liability in both proceedings is integrally related to that of its employees and agents. As such, we do not view the arbitrable issue as "severable" and find it was an abuse of the trial court's discretion to deny a stay of the entire proceeding pending arbitration.

Accordingly, the judgment of the circuit court of Kane County is affirmed insofar as it compelled arbitration only as to CAC, and it is reversed insofar as it failed to stay the entire proceedings in litigation pending the conclusion of arbitration proceedings.

Affirmed in part; reversed in part and remanded.

NASH, P.J., and WOODWARD, J., concur.