TO–AM EQUIPMENT COMPANY,
INC., Plaintiff,

v.

MITSUBISHI CATERPILLAR
FORKLIFT AMERICA, et
al., Defendants.

No. 95 C 0836.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 16, 1995.

Gary W. Leydig, Levin, McParland, Phillips, Leydig & Haberkorn, Chicago, IL, for To–Am Equipment Company, Inc. and Richard T. Todd.

John Edward Burke, Charles Daniel Knight, Burke, Weaver & Prell, Chicago, IL, Angela Marsh, Keck, Mahin & Cate, Chicago, IL, Jacqueline Williams Vlaming, Keck, Mahin & Cate, Oakbrook Terrace, IL, for defendants and counter-claimant.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff To–Am Equipment Company brings this diversity action against Mitsubishi Corporation, Mitsubishi Caterpillar Forklift America (MCFA), Mitsubishi Distribution, Inc. (MDI), and several corporate directors, officers, and employees of MCFA and MDI.[1] To–Am, a former franchisee of MCFA and MDI, alleges that the defendants violated provisions of the Franchise Disclosure Act of 1974, Ill.Rev.Stat. ch. 121½, ¶¶ 701–40 (1985), and the Franchise Disclosure Act of 1987, 815 ILCS 705/1–44 (1993 & Supp.1995). In addition, the plaintiff alleges that the defendants breached the franchise agreement that granted To–Am a franchise. MCFA asserts a counterclaim against To–Am and its president, Richard Todd, alleging that To–Am has failed to pay MCFA for equipment that To–Am ordered and received. Presently before this court are motions to dismiss filed by two groups of defendants, and MCFA's motion for summary judgment on its counterclaim. For the reasons set forth below, we grant the motions to dismiss as to certain defendants, deny the motions to dismiss as to other defendants,

---

1. On April 4, 1995, we entered To–Am's voluntary dismissal of MDI. In addition, To–Am originally named Mitsubishi International Corporation as a defendant, but we also entered voluntary dismissal of that corporation on May 26, 1995.

and grant MCFA's motion for summary judgment on the counterclaim.

## I. Background

To–Am is a forklift dealership which sells, leases, and services forklifts from its Frankfort, Illinois location. MDI sold forklifts to dealerships such as To–Am; MCFA is a successor corporation of MDI. In or around 1986,[2] To–Am and MDI entered into a Distributor Sales and Service Agreement (the "Agreement"), which designated To–Am as a distributor of MDI forklifts in specified Illinois and Indiana counties.

To–Am alleges that on February 2, 1994, MCFA, as MDI's successor corporation, notified To–Am that the agreement was terminated as of April 3, 1994. According to the plaintiff, the termination came just as To–Am was on the cusp of finally reaping the rewards of years of market development. The plaintiff further asserts that MCFA sold To–Am's distribution region to a competing forklift dealership.

To–Am filed this action in January 1995. In its first amended complaint, To–Am named seventeen defendants. We have granted several voluntary dismissals of parties and claims,[3] but fifteen defendants and numerous claims remain. First, although presented as one count of the complaint, Count I crowds together claims against two discrete sets of defendants. To–Am alleges that MCFA: (1) offered and sold the forklift franchise to the plaintiff without first registering to sell franchises with the Attorney General, in violation of Ill.Rev.Stat. ch. 121½, ¶ 704(1); (2) offered and sold the franchise to the plaintiff without first providing a copy of a disclosure statement, in violation of Ill.Rev. Stat. ch. 121½, ¶ 704(2); (3) terminated the franchise without good cause, in violation of Ill.Rev.Stat. ch. 121½, ¶ 704.3(a) "and/or" 815 ILCS 705/19(a); and (4) unreasonably and materially discriminated against the plaintiff and in favor of other franchisees by terminating the franchise, in violation of Ill.Rev.Stat. ch. 121½, ¶ 704.2 "and/or" 815 ILCS 705/18. First Amended Compl. at ¶ 8(a)–(d).

In addition, Count I also alleges that the following defendants are jointly and severally liable for MCFA's acts: (1) Mitsubishi Corporation, controlling parent corporation of MDI; (2) Shimpei Hashimoto, President of MDI; (3) Toshimitsu Ishikawa, Secretary of MDI; (4) Tetsu Okuno, President of MCFA; (5) Lloyd Knapp, Secretary and Director of MCFA; (6) Richard Wagner, Vice President and General Manager of MCFA "and/or" MDI; (7) Pat Reilly, Product Marketing Manager of MCFA; (8) Robert Gilbride, District Sales Manager of MCFA; (9) Toshio Handa, Director of MCFA; (10) Larry Wuench, Director of MCFA; (11) Ryoji Odaka, Director of MCFA; (12) S. Toishi, Director of MDI; (13) Haruo Matsumoto, Director of MDI; (14) Asao Hirayama, Vice President, Treasurer, and General Manager of MDI. First Amended Compl. at ¶ 14(a)–(o).

In Count II, To–Am asserts that MCFA breached the franchise agreement by failing to repurchase equipment that To–Am purchased from MCFA prior to the franchise's termination, and that is currently in To–Am's possession. According to To–Am, the equipment is worth approximately $49,000.

In addition to denying liability on To–Am's claims, MCFA brings a counterclaim against To–Am and its president, Richard Todd. MCFA alleges that To–Am has failed to pay for equipment sent to To–Am pursuant to purchase orders that the dealership submitted to MCFA. According to MCFA, the outstanding balance is $76,276.51. Furthermore, MCFA claims that Todd executed a personal guaranty for To–Am's debts on August 10, 1992, and that Todd has breached the guaranty by refusing to pay the outstanding invoices.

Presently before the court are three motions. First, the individual defendants associated with MCFA—Reilly, Wagner, Gil-

---

2. Although the parties provide us with copies of the purported franchise agreement, the copies reflect a blank space next to the label "Commencement Date of Agreement." While To–Am alleges that the parties entered into the agreement in 1986, First Amended Compl. at ¶ 3, MCFA alleges that the date was June 1985, Amended Counterclaim at ¶ 2(A).

3. In addition to dismissing MDI and Mitsubishi International Corporation, see supra note 1, we entered To–Am's voluntary dismissal of the claims contained in ¶ 8(a), (b) of the complaint as to Reilly, Wagner, Gilbride, Okuno, Knapp, Handa, Wuench, and Odaka.

bride, Okuno, Knapp, Handa, Wuench, and Odaka (the "MCFA defendants")—move to dismiss, contending that absent an allegation that they materially participated in MCFA's allegedly wrongful acts, they cannot be held liable under the Franchise Disclosure Act. Second, Mitsubishi Corporation, and the individual defendants associated with MDI—Hashimoto, Ishikawa, Toishi, Matsumoto, and Hirayama (the "MDI defendants")—move to dismiss, arguing improper service, lack of personal jurisdiction, and like the MCFA defendants, failure to state a claim because To–Am did not allege that Mitsubishi Corporation and the MDI defendants materially participated in MCFA's acts. Finally, MCFA moves for summary judgment on its counterclaim against To–Am—but not Todd—arguing that there exists no dispute that To–Am has failed to pay for the ordered equipment. Because the same question of law governs both motions to dismiss, we discuss them together and turn to them first.

## II. Motions to Dismiss: MCFA Defendants, Mitsubishi Corporation, and MDI Defendants

### A. *Standard for Reviewing Motions to Dismiss*

A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see also Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 644 (7th Cir.1995); *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir. 1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take as true the well-pleaded factual allegations of the complaint and view them, as well as reasonable inferences drawn from them, in the light most favorable to the plaintiff. *Cornfield v. Consolidated High Sch. Dist. 230,* 991 F.2d 1316, 1324 (7th Cir.1993) (citing *Ellsworth,* 774 F.2d at 184).

### B. *Franchise Disclosure Act* [4]

The MCFA defendants, Mitsubishi Corporation, and the MDI defendants primarily contend that, absent allegations that the defendants materially participated in MCFA's acts, To–Am has failed to state a claim under the Illinois Franchise Disclosure Act.[5] The parties pay scant attention to deciphering which version of the Franchise Disclosure Act—the Act of 1974 or the Act of 1987, which repealed the 1974 version—governs the franchise agreement at issue. The

---

4. Although art. XIII, ¶ 6 of the Agreement provides that Texas law will govern interpretation of the Agreement, the parties do not dispute that Illinois law applies, and we will apply Illinois law to this action. *See Rexford Rand Corp. v. Ancel,* 58 F.3d 1215, 1218–19 n. 6 (7th Cir.1995). In addition, we could apply Illinois law because the Franchise Disclosure Act's antiwaiver provision trumps the Agreement's choice of law arrangement. *Hengel, Inc. v. Hot 'N Now, Inc.,* 825 F.Supp. 1311, 1315–17 (N.D.Ill.1993).

5. Mitsubishi Corporation and the MDI defendants also raise several other arguments in support of their motion to dismiss. These defendants argue that they were improperly served because the service of process provision used by To–Am, 815 ILCS 705/35, authorizes service only if the defendants "engaged in conduct prohibited or made actionable by this Act." Mitsubishi Corporation and the MDI defendants contend that they did not engage in actionable "conduct," and that To–Am alleged only a violation of the Franchise Disclosure Act of 1974, not "this Act," that is, the Act of 1987. We reject these arguments as reasons to dismiss. Whether these defendants engaged in actionable "conduct" is the inquiry reserved for the motion to dismiss for failure to state a claim, and To–Am in fact repeatedly alleged violations of the Act of 1987, *see* First Amended Compl. at ¶ 4, 8(c), (d), 12.

In addition, Mitsubishi and the MDI defendants contend that they are not subject to personal jurisdiction in Illinois. Specifically, these defendants argue that they are protected by the "fiduciary shield" doctrine, which "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." *Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 912 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1964, 131 L.Ed.2d 855 (1995). However, there exists a split in Illinois authority regarding whether the exercise of discretion by the defendant wielding the fiduciary shield renders the doctrine inapplicable. *Brujis v. Shaw,* 876 F.Supp. 975, 979 (N.D.Ill.1995). The parties provide us with meager help in determining the applicability of the fiduciary shield doctrine; accordingly, although we ordinarily decide questions of jurisdiction before addressing the merits, in these circumstances we may rule on the merits first. *Rekhi v. Wildwood Indus.,* 61 F.3d 1313, 1316 (7th Cir.1995).

plaintiff and the MCFA defendants refer to the Act of 1987 version, 815 ILCS 705/1–44, which is the current version, while Mitsubishi Corporation and the MDI defendants refer to the Act of 1974, Ill.Rev.Stat. ch. 121½, ¶¶ 701–40 (1985). We are confident that the Act of 1974 applies to the Agreement, which was entered into prior to the effective date of the Act of 1987.[6]

The statutory scheme sets forth the duties of franchisors who wish to sell franchises in Illinois; several duties are relevant here. First, franchisors must register with the Attorney General prior to offering franchises for sale. Ill.Rev.Stat. ch. 121½, ¶¶ 704(1), 716.1. In addition, franchisors must provide prospective franchisees with "a copy of an effective disclosure statement" prior to the franchise agreement's execution or prior to the franchisor's receipt of consideration for the franchise. ¶ 704(2). During the franchising relationship, the franchisor may not "unreasonably and materially discriminate between franchisees in the charges offered or made for franchise fees, royalties, goods, services, equipment, rentals or advertising services." ¶ 704.2. Finally, a franchisor may not "terminate a franchise prior to the expiration of its term except for 'good cause.'" ¶ 704.3.

The Act of 1974 also creates private causes of action for statutory violations; ¶ 721(1) imposes direct liability against certain categories of persons, while ¶ 721(3) imposes joint and several liability against others:

(1) Any franchisee ... may bring an action for violation of this Act to recover damages sustained by reason of such violation against the franchisor, subfranchisor, franchise broker or salesperson or other person by or on behalf of whom such sale was made or who shall have participated or aided in any way in making such sale....

. . . .

(3) Every person who directly or indirectly controls a person liable under Section 21(1) [paragraph 721(1) ] ..., every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable *who materially aids in the act or transaction constituting the violation,* are [sic] also liable jointly and severally with and to the same extent as such person, unless said person who otherwise is liable had no knowledge or reasonable basis to have knowledge of the facts, acts or transactions constituting the alleged violation.

¶ 721(1), (2) (emphasis added). We must determine whether the clause expressing the requirement, "materially aids in the act or transaction constituting the violation," applies only to the preceding category—"every

---

**6.** Illinois law instructs that, absent clear language to the contrary, statutes apply prospectively only. *First of Amer. Bank v. Netsch,* 166 Ill.2d 165, 209 Ill.Dec. 657, 664–65, 651 N.E.2d 1105, 1112–13 (1995). Consistent with this presumption of prospectivity, the Act of 1987 expressly provides that "[p]rior law exclusively governs all suits, actions, prosecutions, or proceedings which are pending or may be initiated *on the basis of facts occurring before the effective date of this Act* [January 1, 1988]." 815 ILCS 705/28 (emphasis added). Furthermore, section 44 of the Act of 1987 declares, "This Act shall apply only to actions undertaken on and subsequent to the date this Act takes effect as well as to all resulting rights, claims, penalties, offenses and punishment." § 44. According to To–Am, the agreement at issue was entered into during 1986; thus, the Act of 1974 governs. *See Mechanical Rubber & Supply Co. v. American Saw & Mfg.,* 810 F.Supp. 986, 992 (C.D.Ill.1990) (citing *McAleer Buick–Pontiac Co. v. General Motors Corp.,* 95 Ill.App.3d 111, 50 Ill.Dec. 500, 419 N.E.2d 608 (1981)). It is true that annual renewal of a franchise agreement constitutes the making of a new contract, and that the new contract would be governed by the statute in effect at the time. *Reinders Bros. v. Rain Bird Eastern Sales Corp.,* 627 F.2d 44, 49–50 (7th Cir.1980); *Terry v. Atlas Van Lines, Inc.,* 679 F.Supp. 1467, 1473 (N.D.Ill. 1986). However, the agreement between To–Am and MDI appears to eschew annual renewals in favor of a continuing contract. Agreement at art. X. Therefore, we will apply the Act of 1974 in this action.

We note, however, that the service of process provision in the Act of 1987, 815 ILCS 705/35, does apply retroactively because the provision "'merely establishes a new mode of obtaining jurisdiction.'" *See Ores v. Kennedy,* 218 Ill. App.3d 866, 161 Ill.Dec. 493, 497, 578 N.E.2d 1139, 1143 (1991) (quoting *Nelson v. Miller,* 11 Ill.2d 378, 143 N.E.2d 673, 675 (1957)). Accordingly, we reject Mitsubishi Corporation and the MDI defendants' suggestion that To–Am improperly served them by employing the service of process provision from the Act of 1987.

employee of a person so liable"—or rather to each of the categories listed in ¶ 721(3).

 Under Illinois law, "[t]he fundamental purpose of statutory construction is to ascertain and give effect to the legislature's intent." *First of Amer. Bank,* 209 Ill.Dec. at 664, 651 N.E.2d at 1112. Furthermore, "in interpreting a statute the language used by the legislature must be given its plain and ordinary meaning." *People v. Brandon,* 162 Ill.2d 450, 205 Ill.Dec. 421, 426, 643 N.E.2d 712, 717 (1994). Also, the Act of 1974 should be "liberally construed" to effectuate its purposes. ¶ 738. Finally, the "last antecedent doctrine" generally instructs that "relative or qualifying words, phrases, or clauses are to be applied to the words or phrases immediately preceding and not as extending to or including other words, phrases or clauses more remote, unless the intent of the General Assembly disclosed by the context and reading of the entire statute requires," *Board of Educ. v. Regional Bd. of Sch. Trustees,* 135 Ill.App.3d 486, 90 Ill.Dec. 355, 360, 481 N.E.2d 1266, 1271 (1985), or unless the modifier is preceded by a comma, *Board of Trustees of the Policemen's Pension Fund v. Illinois Dep't of Ins.,* 42 Ill. App.3d 155, 1 Ill.Dec. 171, 174 & n. 1, 356 N.E.2d 171, 174 & n. 1 (1976).

 To be sure, the omission of a comma before the clause "who materially aids in the act or transaction constituting the violation" suggests that the "materially aids" element applies only to the immediately preceding clause, "every employee of a person so liable," ¶ 721(3). We think, however, that the Illinois Supreme Court would hold otherwise. First, an Illinois Appellate Court decision indicates a different reading of ¶ 721(3), *Vukusich v. Comprehensive Accounting Corp.,* 150 Ill.App.3d 634, 103 Ill.Dec. 794, 501 N.E.2d 1332 (1986), and as a federal court sitting in diversity, we generally defer to decisions of the Illinois Appellate Court, *Rose v. Franchetti,* 979 F.2d 81, 85 (7th Cir.1992) ("Decisions of intermediate state courts offer the best guidance in this enterprise [predicting state supreme courts], and we follow their lead unless we have solid reason to believe that the state's highest court would repudiate them.").

In *Vukusich,* after a dispute arose over a franchise agreement, the franchisees brought an action under the Act of 1974, seeking damages from the franchisor-corporation and the corporation's executives. The corporation and the executives invoked an arbitration clause in the franchise agreement, but the trial court compelled arbitration only as to the corporation; only the corporation, not the executives, had signed the franchise agreement. The executives appealed, arguing that they too should proceed to arbitration because they were named as individual defendants merely because of their "status" as the franchisor's agents and that the corporation was the "real party in interest." *Vukusich,* 103 Ill.Dec. at 795–96, 798, 501 N.E.2d at 1333–34, 1336.

The court in *Vukusich* rejected this characterization of liability under the Act of 1974, reasoning that the Act "gives an aggrieved party separate and distinct rights of recovery against a franchisor *and* its individual officers and employees." *Id.,* 103 Ill.Dec. at 798, 501 N.E.2d at 1336 (emphasis in original). The court described the joint and several liability created by ¶ 721(3):

> This last subsection [¶ 721(3)] makes it clear that the potential liability imposed thereunder is individual liability against "every principal executive officer or director of a corporation" liable under [¶ 721(1) and (2)] "who materially aids in the act or transaction constituting the violation." Such officer or director is individually "liable jointly and severally with and to the same extent" as the corporation unless the officer or director "had no knowledge or reasonable basis to have knowledge of the facts, acts or transactions constituting the alleged violation."

*Id.* at 799, 501 N.E.2d at 1337 (quoting ¶ 721(3)). Thus, according to the court in *Vukusich,* joint and several liability under ¶ 721(3) attaches if the defendant materially aids in the violating act or transaction, unless the defendant does not know or has no reasonable basis to know of the "facts, acts or transactions constituting the alleged violation."

This description of ¶ 721(3) liability is consistent with Illinois law regarding the liability of corporate officers. As the court in

*Vukusich* explained, a corporate officer may be personally liable " 'only if he with knowledge, or recklessly without it, participates or assists in the fraud.' " *Id.* (quoting *Citizens Sav. & Loan Ass'n v. Fischer,* 67 Ill.App.2d 315, 214 N.E.2d 612, 616 (1966)). Thus, the reasoning employed by the court in *Vulusich* supports reading the "materially aids" element into each category of potentially liable persons in ¶ 721(3).

■ We also observe that, in interpreting ¶ 721(3), the last antecedent doctrine need not apply inflexibly to render dispositive the omission of a comma prior to the "materially aids" clause. The omission of a comma does not necessarily foreclose applying a modifier to preceding clauses: " 'When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.' " *Board of Trustees of the Policemen's Pension Fund,* 1 Ill. Dec. at 174, 356 N.E.2d at 174 (quoting *Porto Rico Ry., Light & Power Co. v. Mor,* 253 U.S. 345, 348, 40 S.Ct. 516, 518, 64 L.Ed. 944 (1920)). Because under Illinois law knowing *participation* is generally required to impose liability on corporate officers, we read the "materially aids" element as applicable to each category listed in ¶ 721(3).[7]

Finally, the liability section of the current Franchise Disclosure Act lends support to our reading of ¶ 721(3). The Act of 1987 included a comma preceding the clause, "who materially aids in the act or transaction constituting the violation," 815 ILCS 705/26 (1993), and a 1992 amendment to the liability

section retained the comma, 815 ILCS 705/26 (Supp.1995). There exists no indication that the addition of the comma was meant to work a fundamental change to liability under ¶ 721(3), and we thus hold that ¶ 721(3) liability requires that the defendant "materially aids in the act or transaction constituting the violation." [8]

■ Accordingly, we dismiss the action as to Mitsubishi Corporation, the MDI defendants, and from among the MCFA defendants, Okuno, Knapp, Handa, Wuench, and Odaka. The complaint fails to allege that those defendants materially aided in MDI's or MCFA's conduct. However, we deny the motion to dismiss as to three of the MCFA defendants, Reilly, Wagner, and Gilbride, because the complaint does allege that these three defendants were "material participant[s]" in the statutory violations. First Amended Compl. at ¶ 14(g)-(i). We of course apply federal notice-pleading standards in diversity actions, *Redfield v. Continental Cas. Corp.,* 818 F.2d 596, 605 (7th Cir.1987), and although the allegations are framed as conclusions, the complaint sufficiently places Reilly, Wagner, and Gilbride on notice of the Franchise Disclosure Act claims, *cf. Jackson v. Marion County,* 66 F.3d 151, 153 (7th Cir.1995); *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 78–79 (7th Cir.1992).

## III. Motion for Summary Judgment: MCFA Counterclaim

### A. *Standard for Reviewing Motions for Summary Judgment*

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if

---

7. We point out that general canons of construction are "more appropriately applied to divine intent from statutes carefully worded and assiduously compiled," rather than from statutes reflecting "imprecise statutory language." *See Tippins Inc. v. USX Corp.,* 37 F.3d 87, 93 (3d Cir. 1994) (refusing to limit modifying clause as applying only to the last antecedent, even though no comma preceded the modifying clause, because statute "inartfully craft[ed]"). The Act of 1974, and ¶ 721 in particular, reflects an absence of grammatically necessary commas. *E.g.,* ¶ 721(1) (omitting comma from a series listing categories defined as distinct concepts under the Act: "franchisor, subfranchisor, franchise broker[,] or salesperson or other person by or on behalf of whom such sale was made"); ¶ 704.2 (omitting comma from a series listing distinct

categories: "franchise fees, royalties, goods, services, equipment, rentals[,] or advertising services").

8. We find unpersuasive To–Am's reliance on a case interpreting New York law, *A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.,* 162 Misc.2d 941, 618 N.Y.S.2d 155 (N.Y.Sup.Ct.1994) and cases interpreting California law, *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.,* 890 F.2d 165 (9th Cir.1989), and *Courtney v. Waring,* 191 Cal.App.3d 1434, 237 Cal.Rptr. 233 (1987). The text and structure of the New York law renders that decision inapplicable, and in the cases interpreting California law, the issue was neither presented nor meaningfully analyzed.

"there is no genuine issue as to any material fact, and.... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991).

### B. *Relationship between Franchise Agreement and Purchase Orders*

MCFA moves for summary judgment on its counterclaim as to To–Am, maintaining that there exists no genuine issue as to To–Am's failure to pay for equipment and parts sent to To–Am pursuant to purchase orders. According to MCFA, the outstanding balance due on the invoices is $76,276.51. MCFA's 12(M) at ¶ 5. Rather than contest the dollar amount that MCFA labels as outstanding on the purchase orders, To–Am argues that MCFA itself is breaching the Agreement by refusing to repurchase some of the products sent pursuant to the purchase orders, To–Am's 12(N) at ¶ 5; this claim is Count II of To–Am's complaint. To–Am asserts that MCFA's counterclaim is thus subject to set-off and summary judgment is inappropriate.

Under Illinois law, "a buyer must pay for the goods it accepts." *ECHO, Inc. v. Whitson Co.,* 52 F.3d 702, 705 (7th Cir.1995) (citing 810 ILCS 5/2–206(1)). The Illinois Uniform Commercial Code (UCC) provides, however, that "[t]he buyer ... may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the *same* contract."

810 ILCS 5/2–717 (emphasis added). According to To–Am, the purchase orders and the Agreement are the "same" contract, and thus the outstanding balance from the purchase orders is subject to set-off to the extent of the damages arising from MCFA's alleged breach of the Agreement's repurchase provision.

However, where a franchisee has accepted goods ordered pursuant to purchase orders, the amount due on those goods is not subject to set-off for the franchisor's alleged breach of a related franchise agreement. *ECHO, Inc.,* 52 F.3d at 705; *Shintom Amer., Inc. v. Car Telephones, Inc.,* 45 F.3d 1107, 1109 (7th Cir.1995); *Schieffelin & Co. v. Valley Liquors, Inc.,* 823 F.2d 1064, 1067–68 (7th Cir.1987).

> As a general matter in applying § 2–717, we have held under Illinois law that distributorship agreements and the purchase orders that arise under them are different contracts. Therefore, the price of the goods a buyer accepts pursuant to a purchase order is not susceptible to set-off against damages the buyer sustains as a result of a seller's alleged breach of a related distributorship agreement.

*ECHO, Inc.,* 52 F.3d at 705 (citing *Schieffelin,* 823 F.2d at 1067–68). This general rule applies where the "purchase orders, not the distributorship agreement, designated the price, type, and quantity of the goods for any particular sale." *Id.* (discussing *Schieffelin,* 823 F.2d at 1067).

Although MCFA has not produced the specific purchase orders giving rise to the outstanding balance, MCFA points to the affidavits of its Manager of Dealer Finance, Gregory King, and an attached accounts receivable statement. King avers that the purchase orders detailed the price, payment terms, type, and quantity of the ordered products, King Supp.Aff. at ¶¶ 4–5. Indeed, the underlying Agreement does not mention specific prices, quantities, or types of equipment, and expresses only that the products will be "determined from MDI's list prices in effect at the time of delivery." Agreement at art. V. In addition, the accounts receivable statement lists the due dates of each of the past due invoices and the amount due from each invoice. Again, To–Am fails to point to any evidence creating a genuine

dispute over the outstanding balance arising from the purchase orders. Accordingly, we enter summary judgment against To–Am [9] on MCFA's counterclaim in the amount of $76,276.51.[10]

## IV. Conclusion

For the reasons stated above, we grant the motions to dismiss as to Mitsubishi Corporation, the MDI defendants, and from among the MCFA defendants, Okuno, Knapp, Handa, Wuench, and Odaka. We deny the motions to dismiss as to Reilly, Wagner, and Gilbride. Finally, we grant MCFA's motion for summary judgment on its counterclaim as to To–Am.[11] It is so ordered.

9. Because MCFA moved for summary judgment against To–Am only, we enter summary judgment against To–Am, and not as to Todd, who MCFA labels a "third-party defendant." Indeed, we question Todd's status as a party in this litigation; a third-party defendant is properly labelled as such only where he "is or may be liable to the third-party plaintiff for all or part of *the plaintiff's* claim against the third-party plaintiff." Fed.R.Civ.P. 14(a) (emphasis added). MCFA is not, and could not, assert that Todd is liable for To–Am's claim against MCFA. We also do not discern service of process on Todd or an attorney appearance on Todd's behalf. We invite the parties to reexamine Todd's status in this litigation.

10. We reject To–Am's argument that MCFA should be precluded from arguing that the outstanding balance on the invoices arises from the purchase orders because MCFA's counterclaim and briefing referred to the outstanding balance as arising from the Agreement. Although MCFA's counterclaim and briefing were far from clear, MCFA did allege that "[t]here are outstanding unpaid invoices due from To–Am for the purchase of Product," Counterclaim at ¶ 5, and specifically relied on cases distinguishing between purchase orders and distributorship agreements in its briefing, MCFA's Br. at 3 (citing *Shintom*, 45 F.3d at 1109, and *Schieffelin*, 823 F.2d at 1066–67).

11. MCFA does not specifically request that we enter final judgment on its counterclaim pursuant to Fed.R.Civ.P. 54(b), and we refrain from doing so at this time. *Cf. ECHO, Inc.*, 52 F.3d at 704 (noting that appeal of counterclaim "merely represents a dispute over how to begin the accounting process").